## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VICTORIA TOENSING &** <br> **JOSEPH E. diGENOVA** <br> 1776 K Street, N.W. #737 <br> Washington, D.C. 20006 <br><br>     Plaintiffs, <br><br>     v. <br><br> **U.S. DEPARTMENT OF JUSTICE** <br> 950 Pennsylvania Avenue, N.W. <br> Washington, D.C. 20530 <br><br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, as amended, and the Privacy Act of 1974 ("Privacy Act"), 5 U.S.C. § 552a, for injunctive and other appropriate relief, and release of agency records requested by the plaintiffs from defendant United States Department of Justice ("DOJ").

### Jurisdiction and Venue

2. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over the action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701-706. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

### Parties

3. Plaintiff Victoria Toensing is an attorney practicing and licensed in Washington, D.C.

4. Plaintiff Joseph E. diGenova is an attorney practicing and licensed in Washington, D.C.

5. Defendant DOJ is a Department of the Executive Branch of the United States Government. DOJ is an "agency" within the meaning of 5 U.S.C. § 552(f). The Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), and the Criminal Division of the Department of Justice ("Criminal Division") are all component agencies/offices/bureaus of defendant DOJ.

## STATUTORY FRAMEWORK

### The Freedom of Information Act

6. The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release records to the public unless one or more specific statutory exemptions apply.

7. An agency must respond to the party making a FOIA request within 20 working days, notifying the party of at least the agency's determination whether or not to fulfill the request and of the requester's right to appeal the agency's determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i).

8. An agency must respond to a FOIA appeal within 20 working days, notifying the appealing party of the agency's determination to either release the withheld records or uphold the denial. 5 U.S.C. § 552(a)(6)(A)(ii).

9. In "unusual circumstances," an agency may delay its response to a FOIA request or appeal, but must provide notice and must also provide "the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B).

2

10. This Court has jurisdiction, upon receipt of a complaint, "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

11. The FOIA provides a mechanism for disciplinary action against agency officials who have acted inappropriately in withholding records. Specifically, when requiring the release of improperly withheld records, if the court makes a written finding that "the circumstances surrounding the withholding raise questions whether agency personnel acted arbitrarily or capriciously," a disciplinary investigation is triggered. 5 U.S.C. § 552(a)(4)(F).

## STATEMENT OF FACTS

### Background Information

12. Attorneys Joseph E. diGenova and Victoria Toensing ("Counsel") and the law firm diGenova & Toensing (d&T) represented New Castle County ("NCC") Executive Thomas Gordon in legal proceedings beginning in September 2000. Mr. Gordon was the target of an investigation based on newspaper allegations of misuse of government funds for travel, purchase of office furniture, and other items.

13. NCC authorized payment of legal fees under a County Code provision permitting individual representation if the matter is related to the person's official duties. Sherry Freebery was an NCC Administrative Officer, who was also being investigated. She retained Hamilton P. Fox, III as legal counsel under the same Code provision.

14. From January to March of 2002, Mr. Gordon and Ms. Freebery sought legal counsel with the law firm of Kirkland & Ellis because they believed a newspaper, *The News Journal*, was planning to launch a defamatory attack on them. The newspaper planned to make materially false and misleading allegations concerning the official conduct of Mr. Gordon and Ms. Freebery

3

as well as the official conduct of other NCC employees. Kirkland & Ellis, which was recommended by d&T, was to be counsel for NCC.

15. Counsel for NCC then provided an amendment to the representation stating that d&T's representation with Kirkland & Ellis had a "common interest" with d&T's earlier (September 2000) representation of Mr. Gordon. Mr. diGenova and Ms. Toensing, in connection with the Kirkland & Ellis representation, attended two meetings, took notes, provided Kirkland & Ellis background from the earlier representation, and reviewed drafts of letters Kirkland & Ellis sent to Gannett, the parent company of *The News Journal*. All this work was done on behalf of Mr. Gordon.

16. Kirkland & Ellis' representation proved successful. The newspaper stopped writing and working on the articles. The Kirkland & Ellis representation is the stated subject of the subpoenas discussed in paragraphs 20-23, infra.

**Federal Investigation**

17. In September 2002, the U.S. Attorney for the District of Delaware ("U.S. Attorney") publicly launched an intense investigation directed at Mr. Gordon and Ms. Freebery and others for "misuse of public funds" based on their using political (unclassified) employees to work on a County election during work hours. Both Mr. Gordon and Ms. Freebery were targets of the investigation.

18. On October 8, 2002, Assistant County Attorney Megan D'Iorio wrote Ms. Toensing confirming that d&T "has been retained to represent Thomas P. Gordon, New Castle Executive" for the federal investigation. On October 16, 2002, a retainer was executed stating d&T would represent Mr. Gordon under the same Code provision of the previous letters of retention.

4

19. No County funds were ultimately paid to d&T for the federal representation because the U.S. Attorney wrote a public letter stating he was investigating "abuse and fraud" in the County government. This affirmative disclosure was followed by a lawsuit in Chancery Court brought by certain allegedly "interested parties" to block payments to legal counsel for Mr. Gordon and Ms. Freebery.[1]

20. As early as October 2002, the U.S. Attorney declared to persons in Wilmington, Delaware that there "will be indictments" in the case. Kirkland & Ellis was subpoenaed for its work product and testimony in the newspaper allegation matter. Kirkland & Ellis represented the NCC, not an individual. The judge had ruled previously in another matter in the same investigation that NCC either did not have an attorney-client privilege or had waived it. NCC did not appeal that decision. Thus, Kirkland & Ellis complied with the subpoena, which included all the documents d&T had reviewed, and any information about the two meetings Mr. diGenova and Ms. Toensing had attended during that earlier representation.[2]

21. On November 24, 2003, at approximately 5:00 p.m., the U.S. Attorney telephoned Mr. diGenova to state that he had three (3) grand jury subpoenas with return dates of December 9, 10, and 11, 2003. One subpoena was addressed to the law firm d&T and included a demand for privileged material and documents. The other two were for the testimony of Ms. Toensing

---

[1] At the time of the Chancery Court decision, NCC had paid d&T $6,458.80, which was returned because of the Chancery Court decision.

[2] DOJ regulations require Assistant U.S. Attorneys to make "all reasonable attempts" to obtain the desired information from "alternative sources" before issuing a subpoena to an attorney. United States Attorney's Manual § 9-130410(B). Only after all of these attempts prove *unsuccessful* may such a subpoena be issued. *Id.* § 9-130410(C).

and Mr. diGenova.  The U.S. Attorney had no communication whatsoever with Mr. diGenova or Ms. Toensing about the subpoenaed information prior to that November 24, 2003 phone call.[3]

22.  Ms. Toensing, Mr. diGenova, and d&T retained Jacob A. Stein as counsel in the matter of the subpoenas.  Mr. Stein contacted the U.S. Attorney's office requesting a continuance until January 3 or 4, 2004.  The office of the U.S. Attorney stated in a December 4, 2003 letter that it would permit no change in the return dates if the subpoenas were challenged.  The letter also claimed there was no basis for moving against the subpoenas because the attorney-client privilege had been waived by NCC and a court would apply this waiver "to the context of private counsel retained to represent a **governmental** entity." (Emphasis added).  Mr. diGenova and Ms. Toensing were retained to represent Mr. Gordon as an **individual** under the specific County Code provision.  The letter also stated (for the first time) that the "crime-fraud exception" defeats the claim of attorney-client privilege.

23.  The subpoenas issued to Counsel and d&T demanded documents that concerned their representation of Mr. Gordon only during the retention of Kirkland & Ellis, and Mr. Gordon's interests during that retention.  The subpoenas called for privileged documents that had already been provided by Kirkland & Ellis and that were available from other sources.  Mary Lee Warren of the Criminal Division approved the subpoenas.  During a hastily called in-chambers proceeding, and without benefit of prior briefing, the district court ordered compliance with the subpoenas.  Mr. diGenova, Ms. Toensing and d&T filed an appeal, which was argued in March 2004.  The grand jury subpoenas were ultimately vacated. [4]

---

[3] DOJ regulations require Assistant U.S. Attorneys to communicate with the target attorney and request the desired information voluntarily prior to issuing a subpoena.  United States Attorney's Manual § 9-130410(C).

[4] DOJ regulations require the sought after information to be "reasonably needed for the successful completion of the investigation" before a subpoena may be issued to an attorney.

## FOIA REQUESTS

### Preliminary Statement

24. The crucial documents of the FOIA requested documents were created by the United States Attorney's Office for the District of Delaware. These documents were prepared in that jurisdiction for the Criminal Division, as required by the DOJ. The U.S. Attorney for the District of Delaware, who issued the subpoenas, Colm Connolly, was required to submit a written request to the Criminal Division providing specific information before the subpoenas could be issued. United States Attorneys Manual § 9-13.410 (2009). Thus, the documents should either exist today or they have been purposefully destroyed in bad faith. Further, the underlying criminal case for the subpoenas is closed, and Colm Connolly is no longer the U.S. Attorney, or even employed by the U.S. Government.

25. Additionally, plaintiffs have received information to establish a basis to believe that U.S. Attorney Connolly requested an individual known as Sean Tucker to wear a device that would allow Mr. Tucker's conversations with Toensing to be recorded. Information and permission to utilize this electronic surveillance equipment should be within the possession of the Criminal Division, the EOUSA, and the FBI. Information pertaining to these recordings and the recordings themselves, if they no longer exist, were improperly destroyed in bad faith.

### EOUSA Request

26. By letter dated December 24, 2010, Mr. diGenova and Ms. Toensing requested, pursuant to the FOIA and Privacy Act of 1974, from the EOUSA a copy of all documents,

---

United States Attorney's Manual § 9-130410(C). The U.S. Attorney indicted Mr. Gordon and Ms. Freebery on May 26, 2004, prior to the Third Circuit's decision and without the subpoenaed materials.

7

accumulated, and/or maintained by the U.S. Attorney's Office for the District of Delaware.

Specifically, they requested:

> 1.) The subpoena of Joseph diGenova and/or Victoria Toensing to testify against their client, Thomas P. Gordon, in the District of Delaware including but not limited to all memoranda relating to such requests and meeting notes;
>
> 2.) All responses and internal memoranda throughout the Department of Justice regarding such requests to subpoena diGenova and/or Toensing, including emails and any other electronic communication;
>
> 3.) All calendar entries regarding requests or decisions to subpoena diGenova and/or Toensing;
>
> 4.) Any and all tapes, recordings of any kind, or documents reflecting an intent to tape, of Victoria Toensing from August 2001 to May 26, 2004; and
>
> 5.) Any and all transcripts of such tapes and/or recordings of Victoria Toensing; and
>
> 6.) All documents submitted by the U.S. Attorney Colm Connolly or staff of the U.S. Attorney's Office for the District of Delaware, to the Department of Justice prior to the issuance of the subpoena of Mr. diGenova and Ms. Toensing.

27.  By letter dated January 27, 2011, the EOUSA acknowledged the request.  Further, the EOUSA assigned it Request No. 10-4644.

28.  As of this date, EOUSA has not responded further to this request.

### Criminal Division Request

29.  By letter dated December 24, 2010, Mr. diGenova and Ms. Toensing requested, pursuant to the FOIA and Privacy Act of 1974, from the Criminal Division a copy of all documents, accumulated, and/or maintained by the Criminal Division. Specifically, they requested:

1.) The subpoena of Joseph diGenova and/or Victoria Toensing to testify against their client, Thomas P. Gordon, in the District of Delaware including but not limited to all memoranda relating to such requests and meeting notes;

2.) All responses and internal memoranda throughout the Department of Justice regarding such requests to subpoena diGenova and/or Toensing, including emails and any other electronic communication;

3.) All calendar entries regarding requests or decisions to subpoena diGenova and/or Toensing;

4.) Any and all tapes, recordings of any kind, or documents reflecting an intent to tape, of Victoria Toensing from August 2001 to May 26, 2004; and

5.) Any and all transcripts of such tapes and/or recordings of Victoria Toensing; and

6.) All documents submitted by the U.S. Attorney Colm Connolly or staff of the U.S. Attorney's Office for the District of Delaware, to the Department of Justice prior to the issuance of the subpoena of Mr. diGenova and Ms. Toensing.

30. By letter dated January 14, 2011, the Criminal Division acknowledged the request of Joseph diGenova. The Criminal Division assigned this request file number 201100026P. The Criminal Division advised Mr. diGenova that before a search could be conducted, he needed to indicate which sections of the Criminal Division he wished to be searched.

31. By letter dated January 14, 2011, the Criminal Division acknowledged the request of Victoria Toensing. The Criminal Division assigned this request file number 201100027P. The Criminal Division advised Ms. Toensing that before a search could be conducted, he needed to indicate which sections of the Criminal Division he wished to be searched.

32. By letter dated January 27, 2011 to the Criminal Division, plaintiffs completed the list of sections of the Criminal Division they desired to be searched.

33. By letter dated February 7, 2011, the Criminal Division again acknowledged the request of Joseph diGenova. The Criminal Division assigned this request file number 201100026P.

34. By letter dated February 7, 2011, the Criminal Division again acknowledged the request of Victoria Toensing. The Criminal Division assigned this request file number 201100027P.

35. As of this date, the Criminal Division has not responded further to this request.

**FBI Request**

36. By letter dated December 24, 2010, Mr. diGenova and Ms. Toensing requested, pursuant to the FOIA and Privacy Act of 1974, from the FBI a copy of all documents, accumulated and/or maintained by the FBI Headquarters or the Baltimore Field Office's Wilmington Resident Agency. Specifically, they requested:

> 1.) The subpoena of Joseph diGenova and/or Victoria Toensing to testify against their client, Thomas P. Gordon, in the District of Delaware including but not limited to all memoranda relating to such requests and meeting notes;

> 2.) All responses and internal memoranda throughout the Department of Justice regarding such requests to subpoena diGenova and/or Toensing, including emails and any other electronic communication;

> 3.) All calendar entries regarding requests or decisions to subpoena diGenova and/or Toensing;

> 4.) Any and all tapes, recordings of any kind, or documents reflecting an intent to tape, of Victoria Toensing from August 2001 to May 26, 2004; and

> 5.) Any and all transcripts of such tapes and/or recordings of Victoria Toensing;

> 6.) All documents submitted by the U.S. Attorney Colm Connolly or staff of the U.S. Attorney's Office for the District of Delaware, to the

Department of Justice prior to the issuance of the subpoena of Mr. diGenova and Ms. Toensing; and

7.) Any communications between the District of Delaware concerning Mr. diGenova and Ms. Toensing from August 1, 2001 to May 26, 2004.

37. By letter dated January 5, 2011, the FBI acknowledged the request of Mr. diGenova. The FBI assigned it FOIPA Request No. 1159704-000.

38. By letter dated January 5, 2011, the FBI acknowledged the request of Ms. Toensing. The FBI assigned it FOIPA Request No. 1159705-000.

39. By letter dated February 22, 2011, the FBI denied the request of Mr. diGenova. Specifically, the FBI claimed that they were "unable to identify responsive main file records." The FBI failed to say which locations it searched for responsive records and if they searched for any cross-references or electronic surveillance files responsive to Mr. diGenova's request.

40. By letter dated February 28, 2011, Mr. diGenova administratively appealed the FBI's response.

41. By letter dated March 10, 2011, the FBI denied the request of Ms. Toensing. Specifically, the FBI claimed that they were "unable to identify responsive main file records." The FBI failed to say which locations it searched for responsive records and if they searched for any cross-references or electronic surveillance files responsive to Ms. Toensing's request.

40. By letter dated March 14, 2011, Ms. Toensing administratively appealed the FBI's response.

41. As of this date, there has been no further action on Ms. Toensing's administrative appeal.

42. By letter dated March 10, 2011, the Office of Information Policy ("OIP") acknowledged Mr. diGenova's appeal.  OIP assigned it number AP-2011-01324.

11

43. By letter dated March 24, 2011, OIP acknowledged Ms. Toensing's appeal. OIP assigned it number AP-2011-01454.

44. By letter dated May 23, 2011, the FBI remanded the request of Mr. diGenova back to the FBI for a search for electronic surveillance (ELSUR) records responsive to this request.

45. As of this date, there has been no further action on Mr. diGenova's request.

**REQUESTS FOR RELIEF**

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs respectfully request that this Court:

(1) Declare that the U.S. Department of Justice has violated the Freedom of Information Act by failing to lawfully satisfy plaintiffs' FOIA requests;

(2) Order defendant's component agencies FBI, EOUSA and Criminal Division to search immediately for all records responsive to plaintiffs' FOIA requests;

(3) Order defendant's component agencies FBI, EOUSA and Criminal Division to relase immediately all records responsive to plaintiffs' FOIA requests;

(4) Award plaintiffs their reasonable attorney fees and litigation costs in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant such other further relief as the Court may deem just and proper.

Respectfully submitted,

_____
Scott A. Hodes
D.C. Bar No. 430375
P.O. Box 42002
Washington, D.C  20015
Phone (301) 404-0502
Fax (413) 641-2833

Attorney for Plaintiffs

Dated:  June 30, 2011