**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| VICTORIA TOENSING and JOSEPH E. DIGENOVA, <br><br> Plaintiffs, <br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 11-1215  (BAH) <br><br> Judge Beryl A. Howell |

## MEMORANDUM OPINION

Plaintiffs Victoria Toensing and Joseph diGenova bring this action against the United

States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C.

§ 552 *et seq.*, seeking injunctive relief.  The plaintiffs seek agency records relating to a criminal

investigation performed by the United States Attorneys' Office for the District of Delaware

("Delaware USAO") in which the plaintiffs were subpoenaed to testify before a grand jury.

Pending before the Court are cross-motions for summary judgment pursuant to Federal Rule of

Civil Procedure 56.  For the reasons discussed below, the Court grants in part and denies in part

the Defendant's Motion for Summary Judgment, ECF No. 11, and denies the Plaintiffs' Cross-

Motion for Summary Judgment, ECF No. 15.

## I.     BACKGROUND

Before discussing the FOIA requests at issue, the Court will provide some background

regarding the events giving rise to the Delaware USAO investigation and the plaintiffs'

involvement in that investigation.

A.    <u>**Grand Jury Subpoenas and Alleged Tape Recordings**</u>

The plaintiffs are two attorneys who are married to each other and operate a small,

private law practice.  Decl. of Victoria Toensing ("Toensing Decl.") ¶¶ 4–5, ECF No. 15-3; Decl

of Joseph E. diGenova ("diGenova Decl.") ¶¶ 4–5, ECF No. 15-4.  Beginning in September 2000

the plaintiffs represented the Executive of New Castle County, Delaware, Thomas Gordon, in

legal proceedings related to an investigation of misuse of government funds conducted by the

Delaware Attorney General.  Toensing Decl. ¶ 6; Compl. ¶ 12, ECF No. 1.  Sherry Freebery, a

New Castle County administrative officer, was also being investigated, and she retained an

attorney named Hamilton P. Fox, III, as legal counsel.  Compl. ¶ 13.  Later, from January to

March of 2002, Gordon and Freebery retained the services of the law firm Kirkland & Ellis

("Kirkland") in a related matter, and the plaintiffs attended a meeting with the Kirkland lawyers

"to ensure the lawyers understood what had occurred in 2000."  Toensing Decl. ¶¶ 10–12.[1]

In September 2002, the U.S. Attorney for the District of Delaware, Colm Connolly,

opened an investigation directed at Gordon, Freebery, and others for misuse of public funds, and

as a part of that investigation Mr. Connolly subpoenaed New Castle County for a number of

documents.  Compl. ¶ 17; Toensing Decl. ¶ 14.  The plaintiffs were also both subpoenaed as a

part of this investigation in November 2003.  Toensing Decl. ¶ 44.  These subpoenas requested

both testimony and documents on the part of the plaintiffs and were "limited to the retention of

defamation counsel on behalf of [New Castle] County."  *Id.* (internal quotation marks omitted).

The plaintiffs moved to quash the subpoenas—an effort that lasted several months and included

---

[1] There is a discrepancy between the Complaint and the Toensing Declaration regarding how many meetings the plaintiffs attended with the Kirkland lawyers.  The Complaint states that it was two meetings, *see* Compl. ¶ 15, while the Toensing Declaration states that it was only one meeting, *see* Toensing Declaration ¶ 12.  This discrepancy is immaterial to the resolution of the issues pending before the Court.

an appeal to the Third Circuit—and eventually the subpoenas were vacated as moot by the district court. *See id.* ¶¶ 47–48, 50.

The plaintiffs allege that, during the New Castle County investigation, Mr. Connolly engaged in various acts of prosecutorial misconduct, including making false statements in court filings and otherwise, *id.* ¶¶ 21, 43, 49, 52, 55, violating DOJ guidelines, *id.* ¶ 45, blackmailing a material witness to obtain favorable testimony, *id.* ¶ 41, and conspiring to disqualify the plaintiffs as counsel to Mr. Gordon by secretly recording planned conversations between Ms. Toensing and a New Castle County employee, *id.* ¶¶ 24–28. Most relevant in this action are these alleged secret recordings. According to the plaintiffs, Mr. Connolly sent a New Castle County employee named Shawn Tucker to speak with Ms. Toensing while wearing a hidden recording device. *Id.* ¶ 28. The alleged purpose of this conversation was to induce Ms. Toensing to speak with Mr. Tucker regarding the investigation, even though Mr. Tucker was represented by counsel and thus speaking with him would have been grounds to disqualify Ms. Toensing. *Id.* ¶¶ 25–26, 28. Ms. Toensing firmly believes that she was tape-recorded during this encounter, based primarily on a similar incident that occurred wherein Hamilton Fox was tape-recorded by Mr. Tucker during a meeting with New Castle County employees, allegedly at the behest of Mr. Connolly. *See id.* ¶¶ 24, 27; Decl. of Hamilton P. Fox ("Fox Decl.") ¶¶ 6–8, ECF No. 15-5. The plaintiffs further believe that Mr. Connolly's "legal maneuverings" were "for the sole purpose of getting rid of experienced counsel and investigator." Pls.' Mem. of P. & A. in Supp. Cross-Mot. Summ. J. & Opp'n Def.'s Mot. Summ. J. ("Pls.' Mem.") at 9, ECF No. 15-2.

**B.     FOIA Requests**

Over the course of nearly three and a half years from June 2007 to December 2010, the plaintiffs submitted a total of eight FOIA requests to three separate subcomponents of the

Department of Justice:  the Executive Office of the United States Attorney ("EOUSA"), the

Criminal Division of the DOJ ("Criminal Division"), and the Federal Bureau of Investigation

("FBI").  Only three of these requests are formally at issue in the instant action.

### 1.    *Plaintiffs' First and Second FOIA Requests ("2007 Requests")*

On June 19, 2007, the plaintiffs submitted identical FOIA requests to the EOUSA and the

Criminal Division, which sought "all documents collected, accumulated and/or maintained" by

the subcomponents regarding:

- The subpoena of Joseph diGenova and/or Victoria Toensing to testify against their client, Thomas P. Gordon, including but not limited to all memoranda related to such requests and meeting notes;
- All responses and internal memoranda regarding such requests to subpoena diGenova and/or Toensing, including e-mails and any other electronic communication; and
- All calendar entries regarding requests or decisions to subpoena diGenova and/or Toensing.

*See* Decl. of John F. Boseker ("First Boseker Decl.") ¶ 6, Ex. A (Jan. 23, 2012 ), ECF No. 12-1;

Decl. of John E. Cunningham III ("Cunningham Decl.") ¶ 4, Ex. A, ECF No. 12-2.  The EOUSA

forwarded the EOUSA request (the "2007 EOUSA request") to the Delaware USAO, where Mr.

Connolly and administrative officer Theresa Jordon conducted a search for responsive records

(the "2007 EOUSA search").  *See* Decl. of Theresa A. Jordan ("Jordan Decl.") ¶ 4, ECF No. 11-

5.  The search performed by Connolly and Jordan returned 675 pages of responsive records, 306

of which were eventually released to the plaintiffs between February and May 2008; the

remainder were withheld in their entirety under FOIA Exemptions (b)(3), (b)(5), and/or

(b)(7)(C).  First Boseker Decl. ¶¶ 10, 12.  The plaintiffs were informed that they could

administratively appeal the agency's decision to withhold documents to the DOJ's Office of

Information and Privacy ("OIP") within 60 days of being notified of the decision, but the

plaintiffs did not do so.  *Id.* ¶¶ 11, 13.  A January 9, 2008 memorandum from Mr. Connolly to

Gary Stewart, an Assistant Director at the EOUSA, however, indicated that, in conducting the 2007 EOUSA search, he was instructed by the EOUSA not to forward six categories of documents in response to the plaintiffs' request.[2]  *See* Decl. of Jamie M. McCall ("First McCall Decl.") ¶ 2 (Jan. 23, 2012), ECF No. 11-6

The Criminal Division also conducted a search in response to the 2007 FOIA request and uncovered twelve responsive records, eight of which were released in full and four of which were withheld under FOIA Exemptions (b)(5), (b)(6), and/or (b)(7)(C).  Cunningham Decl. ¶ 6.  Additionally, the Criminal Division located 410 pages of responsive documents that had originated with the EOUSA, and those documents were referred to the EOUSA for review.  *See* First Boseker Decl. ¶¶ 23–24.  Of those 410 pages, 18 pages were released to the plaintiffs on May 30, 2008, and the remaining 392 pages were withheld under FOIA Exemptions (b)(3), (b)(5), and/or (b)(7)(C).  *Id.* ¶ 24.  Once again, although the plaintiffs were informed of their right to administratively appeal, within 60 days, the decision to withhold, they never exercised that right.  *Id.* ¶¶ 25–26.

### 2.     *Plaintiffs' Third FOIA Request ("2008 Request")*

Ms. Toensing submitted another FOIA request to the EOUSA on February 26, 2008, which sought different records, namely:  "a copy of all documents and recordings collected, accumulated and/or maintained" by the defendant "during the investigation of Thomas P. Gordon," and specifically "[a]ny and all tapes and/or recordings of any kind of Victoria Toensing from August 2001 to May 26, 2004; and [a]ny and all transcripts of such tapes and/or recordings of Victoria Toensing."  *Id.* ¶ 14, Ex. G.  The EOUSA forwarded this request to the

---

[2] The six categories included:  (1) drafts of papers filed with the DOJ's Office of Professional Responsibility, (2) drafts of Mr. Connnolly's responses to a Senate Questionnaire, (3) grand jury records, (4) court filings submitted under seal, (5) drafts of court filings submitted under seal or submitted *ex parte*, and (6) duplicate documents.  *See* Decl. of Jamie M. McCall ("First McCall Decl.") ¶ 2 (Jan. 23, 2012), ECF No. 11-6; Def.'s Mem. of P. & A. in Supp. Mot. Summ. J. ("Def.'s Mem.") at 16, ECF No. 11-1.

Delaware USAO in May of 2008.  Jordan Decl. ¶ 5.  An Assistant United States Attorney

("AUSA") named Patricia Hannigan handled the request and certified, without performing any

search, that "we know there were no tapes/transcripts responsive to the request."  Jordan Decl.

Ex. C.  Plaintiff Toensing was notified on October 28, 2008 that no responsive records had been

found and that she had 60 days to administratively appeal that result to the OIP, though no

administrative appeal was ever filed.  First Boseker Decl. ¶¶ 20–23.

### 3. *Plaintiffs' Fourth and Fifth FOIA Requests ("2009 Requests")*

On February 11, 2009, the plaintiffs once again submitted identical FOIA requests to the

EOUSA and the Criminal Division.  *Id.* ¶ 27; Cunningham Decl. ¶ 7.  These requests both sought

all documents "collected, accumulated and or maintained" by each component regarding:

- The subpoena of Joseph diGenova and/or Victoria Toensing to testify against their client, Thomas P. Gordon, including but not limited to all memoranda related to such requests and meeting notes;
- All responses and internal memoranda regarding such requests to subpoena diGenova and/or Toensing, including e-mails and any other electronic communications;
- All calendar entries regarding requests or decisions to subpoena diGenova and/or Toensing;
- Any and all tapes and records of any kind of Toensing during the investigation of Gordon, specifically from August 2001 to May 26, 2004;
- Any and all transcripts of recordings of any kind of Toensing during the investigation of Gordon, specifically from August 2001 to May 26, 2004; and
- All documents submitted by the U.S. Attorney, Colm Connolly, to DOJ prior to the issuance of the subpoena.

First Boseker Decl. ¶ 27, Ex. N; Cunningham Decl ¶ 7, Ex. E.  Essentially, these requests sought

all of the subpoena and recording records that the plaintiffs had previously sought in their 2007

and 2008 requests, and it added a sixth category that included documents submitted by Mr.

Connolly prior to the issuance of the subpoenas.  In fact, in both requests the plaintiffs

acknowledged:  "We have previously requested these documents in a prior FOIA request."  First

Boseker Decl. Ex. N; Cunningham Decl. Ex. E.

The EOUSA forwarded the request to the Delaware USAO, which in turn advised the EOUSA that "all categories of documents are duplicative, save one," that "the duplicative requests are actually untimely [administrative] appeals of the earlier responses," and that the only responsive record found regarding the new category had already been sent during the previous production of documents.  First Boseker Decl. ¶ 29.  The EOUSA notified the plaintiffs on May 21, 2009, that no new responsive documents had been located, but the plaintiffs administratively appealed that determination on July 20, 2009.  *Id.* ¶¶ 30, 32.  On November 23, 2009, the OIP, which has responsibility for adjudicating FOIA administrative appeals, affirmed the EOUSA's action.  *See id.* Exs. Q–R. The OIP Associate Director, Janice McLeod, who adjudicated the administrative appeal, wrote to the plaintiffs that "no new records had been located that had not already been located in response to your prior [FOIA] requests," and that "I have determined that EOUSA conducted an adequate, reasonable search for records responsive to your request."  *Id.* Ex. R.  Ms. McLeod added that "[i]f you remain interested in records that EOUSA previously processed for you, I suggest that you make a new request to EOUSA and specify that you seek records that you have previously requested."  *Id.*  Ms. McLeod additionally stated that one document previously located by the EOUSA, which had not been responsive to prior requests but was responsive to the plaintiff's new request category, was being withheld under FOIA Exemptions (b)(3) and (b)(5).  *Id.*  Finally, Ms. McLeod notified the plaintiffs that if they were dissatisfied with her decision, they could "file a lawsuit in accordance with 5 U.S.C. § 552(a)(4)(B)."  *Id.*

With respect to the 2009 Criminal Division request, the Criminal Division's FOIA/Privacy Act Unit "promptly initiated searches of the component likely to possess responsive records—the Office of Enforcement Operations (OEO) Policy and Statutory

Enforcement (PSEU)."  Cunningham Decl. ¶ 8.  PSEU replied on April 29, 2009, and June 23, 2009, that they did not locate any responsive records.  *Id.* Ex. F.  The plaintiffs were notified of this action on July 16, 2009, and they administratively appealed the action four days later to the OIP.  *See id.* Exs. G–H.  Ms. McLeod of the OIP affirmed the Criminal Division's action on November 9, 2009, telling the plaintiffs that "no new records were located that had not already been located in response to your prior [FOIA] request," and that "the Criminal Division conducted an adequate, reasonable search for records responsive to your request."  *Id.* Ex. K. Ms. McLeod also once again notified the plaintiffs of their right to file a lawsuit if they were dissatisfied with her disposition of their administrative appeal.  *Id.* No appeal to federal district court was filed, however, with regard to any of the 2009 requests.

### 4.    *Plaintiffs' Sixth, Seventh, and Eighth FOIA Requests ("2010 Requests")*

On December 24, 2010, the plaintiffs submitted a fourth set of FOIA requests to the EOUSA, the Criminal Division, and the FBI, which are the three requests at issue in this case. *See* Compl. ¶¶ 29–45.  The plaintiffs noted that their requests to the EOUSA and the Criminal Division were "similar (but not entirely identical) to previous requests."  *See* First Boseker Decl. Ex. S; Cunningham Decl. Ex. L.  Indeed, the 2010 requests to the EOUSA and the Criminal Division were identical to the 2009 requests, except for three differences that could be considered material.  First, the 2010 requests sought "[a]ll responses and internal memoranda ***throughout the*** [***DOJ***] regarding such requests to subpoena diGenova and/or Toensing."  *See* First Boseker Decl. Ex. S; Cunningham Decl. Ex. L (emphasis added to both).  Second, the 2010 requests sought all tapes, recordings of any kind "***or documents reflecting an intent to tape***." First Boseker Decl. Ex. S; Cunningham Decl. Ex. L (emphasis added to both).  Finally, the 2010 requests sought "[a]ll documents submitted by the U.S. Attorney Colm Connolly ***or staff of the U.S. Attorneys Office for the District of Delaware***, to the [DOJ] prior to the issuance of the

subpoena."  First Boseker Decl. Ex. S; Cunningham Decl. Ex. L (emphasis added to both).  The request submitted to the FBI was identical to the requests submitted to the EOUSA and Criminal Division, but it also included one additional category of records:  "Any communications between the District of Delaware [and the FBI] concerning Mr. diGenova and Ms. Toensing from August 1, 2001, to May 26, 2004."  *See* Decl. of David Hardy ("Hardy Decl.") Ex. A, ECF No. 11-8.

The EOUSA and the Criminal Division both acknowledged receipt of these requests in January 2011, *see* First Boseker Decl. Ex. T; Cunningham Decl. Ex. M, but the plaintiffs allege that they never received any further response prior to filing the instant action.  *See* Compl. ¶¶ 28, 35.  As a result of the EOUSA's and the Criminal Division's failure to respond to the plaintiffs' 2010 requests prior to the filing of this action, the plaintiffs are deemed by statute to have constructively exhausted their administrative remedies with respect to those two requests, even though the OIP never reviewed any of the actions taken by either component in response to the requests.  *See* 5 U.S.C. § 552(a)(6)(C).

For its part, the Criminal Division initiated a search of "DOJ components likely to possess responsive records" on February 7, 2011, and found no responsive records.  *See* Cunningham Decl. ¶ 15; *id.* Ex. O.  The Delaware USAO initially notified the EOUSA that the request was a duplicate request and that responsive records had previously been provided.  *See* First Boseker Decl. ¶ 38.  Subsequently, however, the EOUSA realized that it had not specifically searched for the new category of documents listed in the plaintiffs' 2010 request, *i.e.*, "documents reflecting an intent to tape" Ms. Toensing.  *See* Def.'s Reply in Supp. Mot. for Summ. J. and Mem. Opp'n Pls.' Mot. Summ J. ("Def.'s Reply") at 7, ECF No. 18.  As a result of this oversight, the EOUSA conducted a three-level search for such records in archived witness and correspondence files from the New Castle County investigation, electronic FBI field reports,

the personal notes of the case agents who handled the matter, and the personal files and e-mails of Mr. Connolly. *See* Decl. of Jamie M. McCall ("Second McCall Decl.") ¶¶ 4–14 (Apr. 26, 2012), ECF No. 18-1. This supplemental search, however, yielded no responsive records. *Id.* ¶ 15.

With regard to the FBI request, the FBI searched the indices of its Central Records System ("CRS") but was unable to identify any records responsive to the plaintiffs' request, *see* Hardy Decl. ¶ 7, and it notified the plaintiffs of this result on February 22, 2011, *see id.* Ex. C. The plaintiffs filed an administrative appeal of that action to the OIP on February 28, 2011, *see id.* Ex. D, and the OIP remanded the request to the FBI on May 23, 2011, directing the FBI to conduct a supplemental search of another database, the Electronic Surveillance ("ELSUR") indices, for responsive records, *see id.* Ex. F. The OIP closed the plaintiffs' administrative appeal on August 17, 2011, while the appeal was still pending, because the plaintiffs had commenced the instant action. *Id.* Ex. K (citing 28 C.F.R. § 16.9(a)(3)). Though the FBI's search of the ELSUR indices did not take place until after the plaintiffs commenced the instant action, the FBI was nevertheless unable to locate any responsive records in that search either. *See id.* ¶¶ 11, 29.

\* \* \*

The plaintiffs filed the Complaint in the instant action on June 30, 2011, challenging the defendant's handling of the three 2010 requests to the EOUSA, the Criminal Division, and the FBI. The plaintiffs seek a declaration that the defendant has violated the FOIA with respect to its handling of the 2010 requests; an Order directing the FBI, the EOUSA, and the Criminal Division to immediately conduct a search for all records responsive to the 2010 requests; an Order directing the FBI, the EOUSA, and the Criminal Division to release immediately all

records responsive to the 2010 requests; and attorney fees and litigation costs.  Compl. at 12.

Pending before the Court are cross-motions for summary judgment.  The defendant seeks summary judgment on the basis that each component's search was adequate and that the records withheld were appropriately withheld under FOIA Exemptions (b)(3), (b)(5), and/or (b)(7).  Def.'s Mem. at 12–26.  The plaintiffs seek summary judgment on the grounds that the defendant has violated the FOIA by (1) "fail[ing] to demonstrate that its search was reasonably calculated to uncover all relevant documents," (2) "fail[ing] to account for responsive records located by Mr. Connolly . . . that were not produced, described or included on Defendant's *Vaughn* indices," (3) "fail[ing] to create a sufficient *Vaughn* index," and (4) improperly invoking FOIA Exemptions (b)(3), (b)(5), (b)(6)(C), and (b)(7)(C).  Pls.' Mem. at 12–13.  Alternatively, the plaintiffs ask the Court to review the withheld materials *in camera* before making any findings that the responsive records were properly withheld.  *Id.* at 23.

## II.    STANDARDS OF REVIEW

### A.    <u>FOIA Generally</u>

Congress enacted the FOIA to promote transparency across the government.  *See* 5 U.S.C. § 552; *Quick v. U.S. Dep't of Commerce, Nat'l Inst. of Standards & Tech.,* 775 F. Supp. 2d 174, 179–80 (D.D.C. 2011).  The Supreme Court has explained that the FOIA is "a means for citizens to know 'what their Government is up to.'  This phrase should not be dismissed as a convenient formalism.  It defines a structural necessity in a real democracy."  *Nat'l Archives & Records Admin. v. Favish,* 541 U.S. 157, 171–172 (2004) (citation and internal quotation marks omitted).  "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

This strong interest in transparency must be tempered, however, by the "legitimate governmental and private interests [that] could be harmed by release of certain types of information." *United Techs. Corp. v. U.S. Dep't of Defense,* 601 F.3d 557, 559 (D.C. Cir. 2010); *see also Critical Mass Energy Project v. Nuclear Regulatory Comm'n,* 975 F.2d 871, 872 (D.C. Cir. 1992). Accordingly, Congress included nine exemptions permitting agencies to withhold information from FOIA disclosure. *See* 5 U.S.C. § 552(b). "These exemptions are explicitly made exclusive, and must be narrowly construed." *Milner v. Dep't of the Navy*, 131 S. Ct. 1259, 1262 (2011) (citations and internal quotation marks omitted); *see also Pub. Citizen, Inc. v. Office of Mgmt. & Budget,* 598 F.3d 865, 869 (D.C. Cir. 2010) ("FOIA allows agencies to withhold only those documents that fall under one of nine specific exemptions, which are construed narrowly in keeping with FOIA's presumption in favor of disclosure." (citations omitted)).

### B.   <u>Summary Judgment</u>

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. In ruling on a motion for summary judgment, the Court must draw all justifiable inferences in favor of the nonmoving party and shall accept the nonmoving party's evidence as true. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Estate of Parsons v. Palestinian Auth.,* 651 F.3d 118, 123 (D.C. Cir. 2011). In a FOIA case, when a plaintiff challenges the adequacy of an agency's search, an agency can prevail on summary judgment if it "show[s] beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Morley v. CIA*, 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting *Weisberg v. U.S. Dep't of Justice* ("*Weisberg II*"), 705 F.2d 1344, 1351 (D.C. Cir. 1983)). To meet this burden, the government may rely on relatively detailed and non-conclusory affidavits that are submitted in good faith.

*Id.* at 1116.  When a plaintiff challenges an agency's withholding of documents, the agency is entitled to summary judgment if "no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'"  *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)).

## III.   DISCUSSION

The Court first addresses the scope of the plaintiffs' challenge.  In their opposition to the defendant's Motion for Summary Judgment, the plaintiffs do not specifically challenge the adequacy of the searches performed by the Criminal Division and the FBI.  Although the adequacy of those searches was arguably within the broad sweep of the plaintiffs' Complaint, and although the defendant specifically argued in its Motion for Summary Judgment that those searches were adequate, *see* Def.'s Mem. at 23, 25–26, the plaintiffs' decision not to address the adequacy of those searches in their opposition brief is a concession that those searches were in fact adequate under the FOIA.  *See Shankar v. ACS-GSI*, 258 F. App'x 344, 345 (D.C. Cir. 2007) (holding that plaintiff conceded the merits of an issue when he "did not respond in any way to defendant's argument" on that issue in his opposition before the district court (citing Local Civil Rule 7(b))); *Buggs v. Powell*, 293 F. Supp. 2d 135, 141 (D.D.C. 2003) ("It is understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and address only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citing *FDIC v. Bender,* 127 F.3d 58, 67–68 (D.C. Cir. 1997))).  Therefore, the Court will not address whether the searches performed by the Criminal Division and the FBI were adequate.

### A.   __Exhaustion of Administrative Remedies__

Prior to addressing the merits of the plaintiffs' claims, the Court will also address whether the plaintiffs have sufficiently exhausted their administrative remedies. "'Exhaustion of administrative remedies is generally required before filing in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter to make a factual record to support its decision.'" *Hidalgo v. FBI*, 344 F.3d 1256, 1258 (D.C. Cir. 2003) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 61 (D.C. Cir. 1990)). Although the exhaustion requirement is not jurisdictional, "as a jurisprudential doctrine, failure to exhaust precludes judicial review if 'the purposes of exhaustion' and the 'particular administrative scheme' support such a bar." *Id.* (quoting *Oglesby*, 920 F.2d at 61); *see also Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (holding that "[e]xhaustion of administrative remedies is generally required before seeking judicial review"); *Sinito v. U.S. Dep't of Justice,* 176 F.3d 512, 516 (D.C. Cir.1999) (recognizing that "FOIA requires each requestor to exhaust administrative remedies" (citing *Oglesby*, 920 F.2d 57)); *Dettmann v. U.S. Dep't of Justice,* 802 F.2d 1472, 1476 (D.C. Cir.1986) ("It goes without saying that exhaustion of remedies is required in FOIA cases.").

Under the FOIA, however, there are two ways for a requester to exhaust her administrative remedies. When an agency responds to a request and determines, within twenty days, whether and how to comply with that request, a requester dissatisfied with the agency's determination must administratively appeal that determination to the head of the agency before filing suit. *See* 5 U.S.C. § 552(a)(6)(A); *see also Oglesby*, 920 F.2d at 65 ("[F]oregoing an administrative appeal will preclude the [FOIA] requester from ever bringing suit on that request because the individual will not have exhausted his administrative remedies . . . ."); *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1497 ("*Weisberg III*") (D.C. Cir. 1984) (holding that

appellant "did not exhaust his administrative remedies" where he "pretermitted the administrative stage of the processing of FOIA requests").  When an agency fails to respond to a request within twenty days, however, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request," 5 U.S.C. § 552(a)(6)(C), and may therefore immediately seek judicial review in federal district court.  *See, e.g., Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003) ("A requester is considered to have constructively exhausted administrative remedies and may seek judicial review immediately if . . . the agency fails to answer the request within twenty days.").  This kind of "constructive exhaustion" is "a special provision virtually unique to FOIA."  *Spannaus v. U.S Dep't of Justice*, 824 F.2d 52, 58 (D.C. Cir. 1987).

In this case, the plaintiffs originally sought the majority of the relevant categories of records through FOIA requests submitted in 2007 and 2008, but the plaintiffs never administratively exhausted those requests.  They never administratively appealed the adequacy of the searches performed in response to those requests, nor did they administratively appeal the EOUSA's or the Criminal Division's decisions to withhold documents in response to those requests.  Instead, the plaintiffs chose simply to file subsequent FOIA requests with the EOUSA and the Criminal Division in 2009 and 2010 that were almost entirely duplicative of their 2007 and 2008 requests.  Although there is no question that the plaintiffs properly exhausted their 2009 and 2010 requests, either through administrative appeal or constructive exhaustion, the defendant's responses to those requests were premised upon the searches that had been performed and the withholding decisions that had been made in conjunction with the 2007 and 2008 requests.[3]  *See, e.g.*, First Boseker Decl. Ex. O (EOUSA response to 2009 request stating:

---

[3] The one exception would be the Criminal Division's 2009 search for recording documents, though the plaintiffs do not challenge the adequacy of that search in any event.

"All categories listed in your above FOIA request are duplicative except one.  This office has already responded to your [prior] FOIA request[s] . . . ."); *id.* ¶ 38 ("The [Delaware USAO] notified EOUSA that [the 2010 EOUSA] request was a duplicate of prior requests, [and] that the responsive records had previously been provided."); *id.* Ex. R (notifying plaintiffs that "no new records were located that had not already been located in response to your prior [FOIA] requests").  Therefore, the Court must decide whether allowing the plaintiffs now to challenge, on the basis of constructive exhaustion, (a) the adequacy of the EOUSA's searches and (b) the propriety of the EOUSA's and the Criminal Division's withholding decisions in response to the 2007 and 2008 requests (for which the plaintiffs waived their right to obtain administrative review) would undermine either the "particular administrative scheme" or the "purposes of exhaustion."

### 1.  *The Particular Administrative Scheme*

The D.C. Circuit has held that the FOIA's administrative scheme "favors treating failure to exhaust as a bar to judicial review."  *See Wilbur*, 355 F.3d at 677 (D.C. Cir. 2004) (citing *Hidalgo*, 344 F.3d at 1259); *see also Cunningham v. Holder*, 842 F. Supp. 2d 338, 345 (D.D.C. 2012) ("FOIA is an administrative scheme that not only requires exhaustion of administrative remedies, but, moreover, permits a court to dismiss a case when a plaintiff fails to exhaust his administrative remedies." (citing *Hidalgo*, 344 F.3d at 1259)).  Moreover, the defendant's administrative scheme regarding FOIA requests specifically requires that an administrative appeal be filed within a particular time period if a plaintiff wishes to challenge any agency action in court.  *See* 28 C.F.R. § 16.9(c) (2012) ("If you wish to seek review by a court of any adverse determination, you must first appeal it under this section."); *id.* § 16.9(a) (requiring administrative appeal to be filed "within 60 days of the date of the letter denying your request").  The scheme also requires administrative appeals to "clearly identif[y] the component

determination . . . that [the requester is] appealing." *Id.* § 16.9(a).  Hence, allowing the plaintiffs

now to use their 2010 requests as the vehicle to challenge the adequacy of the EOUSA's searches

performed in response to the 2007 and 2008 requests and the propriety of the defendant's 2007

and 2008 withholding decisions—in spite of the plaintiffs' failure to file administrative appeals

of the agency's responses to their identical 2007 and 2008 FOIA requests—would clearly

frustrate the FOIA administrative scheme generally, as well as the defendant's particular scheme

for processing FOIA requests.

Indeed, the course taken by the plaintiffs could be viewed as an end run around the

FOIA's and the defendant's administrative exhaustion requirements because, if the plaintiffs'

course were generally available, FOIA requesters who failed to exhaust their administrative

remedies the first time around could routinely cure any failure to exhaust by simply filing a

subsequent duplicative request seeking the same records.  In this case, the plaintiffs do not

contest that, because of the nature of the records they seek, no new responsive records would

have been created since 2007 and 2008 when the relevant searches and withholding decisions

were made. *See* Def.'s Reply at 9.  Rather, it is worth noting that they contend that they

submitted new, duplicative requests "to ensure that they had exhausted their administrative

remedies and to afford the government the opportunity to process the requests under the new

FOIA standards set forth on March 19, 2009 by Attorney General Holder, which were not in

effect at the time of the earlier requests." Pls.' Mem. at 6 n.3.

The plaintiffs' explanation, however, falls short in two respects.  First, to the extent the

plaintiffs claim that their duplicative requests were submitted "to ensure that they had exhausted

their administrative remedies," their claim rings hollow.  The plaintiffs did not style their 2009 or

2010 requests as administrative *appeals* of the components' 2007 and 2008 actions; rather, the

plaintiffs clearly intended them to be considered by the defendant as new, stand-alone FOIA requests. *See* First Boseker Decl. Exs. N, S; Cunningham Decl. Ex. L. The 2009 and 2010 requests noted that almost all of the same categories of documents had been sought in prior requests[4] and specifically highlighted any categories of documents that were not covered by the prior requests. *See* First Boseker Decl. Exs. N, S; Cunningham Decl. Ex. L. Additionally, the plaintiffs *separately* filed administrative appeals for both 2009 requests, and although they captioned their initial 2009 and 2010 submissions as "Freedom of Information Act *Request*" and "FOIA/PA *Request*," *see* First Boseker Decl. Exs. N, S; Cunningham Decl. Ex. L, they captioned both of their 2009 administrative appeals as "Freedom of Information Act/Privacy Act *Appeal*," *see* First Boseker Decl. Ex. P; Cunningham Decl. Ex. H. Finally, the plaintiffs stated in their 2009 EOUSA request letter that they were "renew[ing]" the 2007 and 2008 requests. All of this points to the conclusion that the subsequent, duplicative requests were not, in and of themselves, intended to be administrative appeals of the 2007 and 2008 requests, and therefore the Court will not treat them as administrative appeals.

Strangely, the plaintiffs also claimed, for the first time, in their 2010 requests to the EOUSA and the Criminal Division that "due to clerical errors by your office and the Department of Justice, a full appeal of your initial responses was never undertaken by the Department of Justice." *See* First Boseker Decl. Ex. S; Cunningham Decl. Ex. L. On the contrary, however, it was the *plaintiffs'* apparent oversights that resulted in no administrative appeal ever being undertaken in connection with their 2007 and 2008 requests. It is the requester's responsibility to initiate such administrative appeals, and although they were explicitly informed several times

---

[4] The fact that the plaintiffs differentiated the "prior FOIA request" and the "previous requests made by Mr. diGenova and Ms. Toensing" in their subsequent requests is further evidence that the subsequent requests were new requests rather than untimely attempts to appeal or otherwise administratively exhaust their 2007 and 2008 requests. First Boseker Decl. Exs. N, S; Cunningham Decl. Ex. L.

of their rights to administratively appeal, the plaintiffs clearly failed to do so regarding their 2007 and 2008 requests.  Thus, the notion that the plaintiff's duplicative requests submitted in 2009 and 2010 were legitimate attempts to exhaust their administrative remedies is a dubious one and is largely contradicted by the record evidence submitted in this case.

To the extent that the plaintiffs' subsequent requests were intended to "afford the government the opportunity to process the requests under the new FOIA standards set forth on March 19, 2009 by Attorney General Holder," however, their argument has more merit. Attorney General Holder notified the DOJ on March 19, 2009, that "an agency should not withhold information [under the FOIA] simply because it may do so legally," and that "whenever an agency determines that it cannot make full disclosure of requested records, it must consider whether it can make partial disclosure."  *See* Letter from Attorney General Eric Holder to the Heads of Executive Departments and Agencies (Mar. 19, 2009), *available at* http://www.justice.gov/ag/foia-memo-march2009.pdf.  This new guidance from the Attorney General could potentially have led the defendant to produce records, or portions of records, that it had previously withheld.  It is worth observing, however, that the 2009 guidance had no apparent effect on the defendant's actions—no new records were disclosed, and none of the prior withholding decisions were reassessed.  Therefore, although Attorney General Holder's renewed guidance may have afforded the defendant the *opportunity* to reassess its withholding decisions, it neither compelled nor prompted such a reassessment.

This policy change is also irrelevant in terms of the plaintiff's choice, over a year earlier, not to seek administrative review of the agency's responses to their 2007 and 2008 requests, which would have indicated that the plaintiffs were dissatisfied with those responses.  The plaintiffs waived their right to object to the agency's responses in 2007 and 2008 by failing to

file a timely (or even an untimely) administrative appeal, and a minor change to administrative

policy guidance such as this does not serve as a *post hoc* antidote to such a waiver.

## 2. *The Purposes of Exhaustion*

The D.C. Circuit has stated that non-jurisdictional exhaustion serves three primary

purposes: "giving agencies the opportunity to correct their own errors, affording parties and

courts the benefits of agencies' expertise, [and] compiling a record adequate for judicial review."

*Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004) (internal quotation marks

omitted); *accord Wilbur*, 355 F.3d at 677 (holding that the "purposes and policies underlying the

exhaustion requirement" are "to prevent premature interference with agency processes, to give

the parties and the courts [the] benefit of the agency's experience and expertise and to compile

an adequate record for review"). "Exhaustion concerns apply with particular force when the

action under review involves exercise of the agency's discretionary power or when the agency

proceedings in question allow the agency to apply its special expertise." *McCarthy v. Madigan*,

503 U.S. 140, 145 (1992), *superseded by statute on other grounds*, Prison Litigation Reform Act

of 1995, Pub. L. No. 104-134, 110 Stat. 1321. Administrative exhaustion is designed "to give

the agency a fair and full opportunity to adjudicate [a party's] claims," which means "using all

steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on

the merits).'" *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quoting *Pozo v. McCaughtry*, 286 F.3d

1022, 1024 (7th Cir. 2002)).

Two cases from this Circuit—*Hidalgo v. FBI* and *Wilbur v. CIA*—elucidate the concerns

at play in the doctrine of administrative exhaustion. In *Hidalgo*, a prisoner filed a FOIA request

seeking records related to an FBI informant who had helped the government prosecute him.

*Hidalgo*, 344 F.3d at 1257. While the plaintiff's request was still pending within the 20-day

statutory response period, he filed an "appeal," erroneously asserting that the FBI had failed to

respond to his request within the statutory time limit.  *Id.*  Less than two weeks later, the FBI sent

the plaintiff a response denying his FOIA request.  *Id.*  The plaintiff then filed a civil action

challenging the FBI's denial of his request, and the district court granted summary judgment to

the government on the ground that FOIA Exemption 6 precluded disclosure of the information

sought.  *Id.* at 1258.  The Circuit vacated and remanded, however, holding that the plaintiff's

complaint should have been dismissed for failure to exhaust his administrative remedies.  *Id.*

The Circuit held that although "Hidalgo's appeal may have been timely, in a literal sense, it did

not promote the purposes of the exhaustion doctrine" because the administrative appeal was filed

"before the FBI acted on his request" and thus "the appeal could not and did not place the

substance of the FBI's response before the OIP."  *Id.* at 1259.  The OIP, in response to his

untimely administrative appeal, had specifically advised Hidalgo that he could administratively

appeal any final action, and because Hidalgo "did not heed the OIP's directive," to "permit him

to ignore the OIP's directive 'would cut off the agency's power to correct or rethink initial

misjudgments or errors,' and frustrate the policies underlying the exhaustion requirement."  *Id.* at

1259–60 (quoting *Oglesby*, 920 F.2d at 64).

By contrast, *Wilbur* involved a scenario where, although the plaintiff's filing of his FOIA

request and the CIA's denial of that request both occurred in 1994, the plaintiff did not file an

administrative appeal of the denial until January 1999.  *See Wilbur*, 355 F.3d at 676.

Nevertheless, the Court held that the appeal to federal district court was appropriate because the

CIA "received and accepted for consideration" the plaintiff's administrative appeal, even though

it was several years tardy, and thus the plaintiff had ultimately exhausted his administrative

remedies.  *Id.* at 676–77.  The Circuit distinguished the scenario presented in *Wilbur* from that

presented in *Hidalgo* because "Wilbur did not bypass the administrative review process but

pursued it to its end; he was simply late (albeit four years late)." *Id.* at 677.  In other words, because the CIA had accepted and processed Wilbur's administrative appeal and was able to review its initial determination, "the policies underlying the exhaustion requirement [were] served." *Id.*

From *Wilbur* and *Hidalgo*, a clear principle emerges:  Failure to exhaust administrative remedies is not a mere technicality, and a court must decline to decide the merits of an unexhausted FOIA claim when the plaintiff fails to comply with procedures for administrative review, denying the agency an opportunity to review its initial determination, apply its expertise, correct any errors, and create an ample record in the process.  *Wilbur* holds that that opportunity can still come very late—in the form of an untimely administrative appeal— because such an opportunity still pragmatically satisfies the purposes of the administrative exhaustion doctrine so long as the agency chooses to accept and process that appeal and decide the issues presented on the merits.  *Hildago*, however, stands for the proposition that an opportunity for administrative review is no opportunity at all when a requester's appeal for review "d[oes] not place the substance of the [agency's] response before the [reviewing body],"and therefore, in that situation, the purposes of exhaustion would be undermined by having a court consider the merits of the plaintiff's claims.  *Hidalgo*, 344 F.3d at 107; *see also Woodford*, 548 U.S. at 90 (proper administrative exhaustion requires "that the agency addresses the issues *on the merits*" (emphasis added))

In this case, the Court has already found that the plaintiffs' 2009 and 2010 FOIA requests were not untimely administrative appeals of the 2007 and 2008 requests, but rather were framed as new requests.  *See* discussion *supra* pages 16–17.  The essential question, then, is whether the EOUSA or the Criminal Division ever had an opportunity to review their initial determinations

made in 2007 and 2008, such that the purposes of exhaustion could be fulfilled.  With respect to

the adequacy of the 2007 and 2008 EOUSA searches, the Court finds that the EOUSA did have

such an opportunity.  When the plaintiffs administratively appealed their 2009 EOUSA request,

the OIP specifically concluded that "the EOUSA conducted an adequate, reasonable search for

records responsive to your request."  First Boseker Decl. Ex. R.  Because the only EOUSA

searches that had taken place prior to the OIP's decision were those performed in response to the

plaintiffs' 2007 and 2008 requests, *see* Jordan Decl. Exs. A–C, it is reasonable to assume that the

OIP was referencing those searches in its 2009 decision.  The OIP, in reviewing those searches,

had the opportunity to review the EOUSA's documentation of the searches it performed and

could have remanded the matter if it had determined that the searches had been inadequate.

Thus, allowing the plaintiffs to challenge the adequacy of the 2007 and 2008 EOUSA searches

would not undermine the purposes of exhaustion.

 The withholding decisions of both the EOUSA and the Criminal Division, however, are a

different matter.  Those withholding decisions were made in three separate communications to

the plaintiffs:  (1) the February 28, 2008 letter from the EOUSA summarizing the decision to

withhold 370 pages of documents in conjunction with the 2007 EOUSA request; (2) the March

25, 2008 letter from the Criminal Division summarizing the decision to withhold seven pages of

documents in conjunction with the 2007 Criminal Division request; and (3) the May 30, 2008

letter from the EOUSA summarizing the decision to withhold a revised total of 392 pages of

documents.  *See* First Boseker Decl. Exs. E, M; Cunningham Decl. Ex. C.

 None of those actions were ever administratively appealed to the OIP, and the record in

this case contains no evidence that the OIP ever had an opportunity to review these initial

withholding decisions in either 2009 administrative appeal.  This is because the scope of the

plaintiffs' 2009 administrative appeals were necessarily limited to challenging the components'

2009 actions, which did not involve withholding decisions.  *See* First Boseker Decl. Ex. O

(indicating that "[a] search for records . . . has revealed no responsive records regarding the

above subject" and that "a search of the appropriate indices . . . have located no records

responsive to your request"); Cunningham Decl. Ex. G (same).  The faces of the plaintiffs' 2009

administrative appeals also indicate that the only issue being raised was the sufficiency of the

searches performed, stating that the "Basis for Appeal" was that "[t]hese required documents

existed in the District of Delaware" and [t]he documents either exist today or have been

purposefully destroyed in bad faith."  First Boseker Decl. Ex. P; Cunningham Decl. Ex. H.

Under the defendant's regulations, the plaintiffs were obligated to "clearly identif[y] the

component determination" that they were appealing, *see* 28 C.F.R. § 16.9(a), yet the plaintiffs

failed to identify the 2007 and 2008 withholding determinations as a basis for either of their

administrative appeals in 2009.  *See Vt. Dep't of Pub. Serv. v. United States*, 684 F.3d 149, 157

(D.C. Cir. 2012) ("[W]hen 'an agency's regulations require issue exhaustion in administrative

appeals, . . . courts reviewing agency actions regularly ensure against the bypassing of that

requirement by refusing to consider unexhausted issues.'" (quoting *Sims v. Apfel*, 530 U.S. 103,

108 (2000))).  The OIP's decision in both administrative appeals also explicitly noted this

limitation, stating that "no *new* records were located that *had not already been located* in

response to your prior [FOIA] request[s]."  First Boseker Decl. Ex. R; Cunningham Decl. Ex. K

(emphasis added to both).  These adjudications by the OIP clearly did not include any

consideration of whether the EOUSA's or the Criminal Division's initial withholding decisions

were appropriate and therefore these administrative appeals "did not place the substance of the

[withholding decisions] before the OIP." [5]  *Hidalgo*, 344 F.3d at 1259.

---

[5] The plaintiffs' constructive exhaustion of their 2010 requests fares no better because any administrative appeal

In this Circuit, filing a new, duplicative FOIA request has the potential to cure certain defects of a prior FOIA request, such as defects with the FOIA request itself, *see Abuhouran v. U.S. State Dep't*, 843 F. Supp. 2d 73, 77 n.1 (D.D.C. 2012) ("The disposition of this case does not preclude plaintiff from resubmitting his request to DOS with the proper waiver. . . ."); *Ning Ye v. Holder*, 624 F. Supp. 2d 121, 124 n.2 (D.D.C. 2009) ("Should petitioner wish to obtain information from the DOJ, he could (re)submit [his requests], ensure receipt, and properly begin the process (anew)." (internal quotation marks omitted)), [6] or the filing of a federal district court challenge outside the applicable statute of limitations, *see Spannaus*, 824 F.2d at 61 ("[N]othing prevents [a FOIA requester] from requesting the same withheld documents decade after decade without ever bringing a timely suit to compel disclosure."); *Porter v. CIA*, 579 F. Supp. 2d 121, 126 (D.D.C. 2008) ("Where a [FOIA] cause of action is barred by the statute of limitations, a plaintiff may 'simply refile his FOIA request tomorrow and restart the process.'" (quoting *Spannaus*, 824 F.2d at 61)); *Aftergood v. CIA*, 225 F. Supp. 2d 27, 30 (D.D.C. 2002) ("[T]he plaintiff has already resurrected his claim by filing a new FOIA request."). None of these circumstances apply here. [7] In any event, the plaintiffs *failed to cure* the procedural defects in

---

[6] associated with those requests would have been similarly limited. No new records were found, and thus there would have been no withholding decisions for the OIP to review. *See* First Boseker Decl. ¶ 38; Cunningham Decl. ¶ 15 & Ex. O; Second McCall Decl. ¶¶ 4–15. Thus, the only issue that can continue to be addressed in these redundant requests and administrative appeals is the adequacy of each subsequent search and whether all of the responsive documents continue to be accounted for.

[6] *Abhouran* involved a FOIA request seeking information about a third party where the requester had failed to submit a privacy waiver or proof of the individual's death, and thus filing a second, identical request with the appropriate waiver would cure that defect. *See Abhouran*, 843 F. Supp. 2d at 77–78 & n.1. *Ning Ye* involved a requester's failure to establish that he had ever submitted a FOIA request to the agency in the first place, and thus submitting a second, identical request would likewise cure that defect. *See Ning Ye*, 624 F. Supp. 2d at 123–24. These circumstances are clearly distinguishable from the instant case.

[7] It is an open question in this Circuit whether a requester's untimely administrative appeal of an agency's withholding decisions can cure a prior failure to exhaust administrative remedies for those withholding decisions when administrative review of the withholding decisions is not on the merits. For example, had the plaintiffs in this case submitted an untimely administrative appeal to the OIP, explicitly challenging the defendant's 2007 and 2008 withholding decisions, and had the agency rejected that appeal on timeliness grounds or simply ignored the appeal without reaching the merits, it is unclear whether that series of actions would cure the plaintiffs' failure to exhaust their administrative remedies. That circumstance, however, is not before the Court.

their 2007 and 2008 FOIA requests; namely, in their 2009 and 2010 FOIA requests, the plaintiffs never identified the defendant's 2007 and 2008 withholding decisions as a basis for their appeals. Therefore, the defendant never reviewed the merits of those withholding decisions through an administrative appeal—a fundamental prerequisite for judicial review.  *See, e.g.*, *Oglesby*, 920 F.2d at 65 ("[F]oregoing an administrative appeal will preclude the [FOIA] requester from ever bringing suit on that request because the individual will not have exhausted his administrative remedies . . . ." (citing *Spannaus*, 824 F.2d at 59)).

The situation in the instant case is unlike those presented in *Spannaus* and its progeny, where a plaintiff submitted a FOIA request, administratively or constructively exhausted that request, and then waited more than six years to file a lawsuit regarding the same request.  *See Spannaus*, 824 F.2d at 61; *Porter*, 579 F. Supp. 2d at 126–27; *Aftergood*, 225 F. Supp. 2d at 30–31.  In that situation, the defect with the requests was that they were time-barred under 28 U.S.C. § 2401(a), not that they were unexhausted, and as the D.C. Circuit impliedly recognized in *Spannaus*, a requester may "resuscitate at will" a time-barred FOIA claim by simply refiling the request and "restart[ing] the process."  *Spannaus*, 824 F.2d at 55, 61.  The rule announced in the instant case in no way conflicts with the *Spannaus* line of cases because the obligation to comply with the statute of limitations and the obligation to exhaust administrative remedies are independent of one another.  *See, e.g.*, *Porter*, 579 F. Supp. 2d at 129 ("[E]ven if a new request based on substantially similar information is not barred by the statute of limitations, it must still comply with the exhaustion requirement.").  Furthermore, statutes of limitations are designed to

---

Also not before the Court is the circumstance addressed in *Wilbur*.  In *Wilbur*, the agency's choice to accept the requester's appeal and decide that appeal on the merits served to revive the requester's previously unexhausted challenge to the agency's actions.  By contrast, the plaintiffs in the instant case satisfied the exhaustion requirement through *constructive* exhaustion, and thus there was never an administrative appeal on the merits that could have similarly revived (*i.e.*, administratively exhausted) the plaintiffs' unexhausted challenge to the defendant's 2007 and 2008 withholding decisions.

address different concerns than administrative exhaustion requirements.  Statutes of limitations

are designed to "promote finality, repose, and the efficient and prompt administration of justice,"

*AKM LLC d/b/a Volks Constructors v. Sec'y of Labor*, 675 F.3d 752, 767 (D.C. Cir. 2012), while

administrative exhaustion requirements are designed to "giv[e] agencies the opportunity to

correct their own errors, afford[] parties and courts the benefits of the agencies' expertise, [and]

compil[e] a record adequate for judicial review," *Avocados Plus*, 370 F.3d at 1247 (internal

quotation marks omitted).

The instant case is also unlike the situation presented in *Citizens for Responsibility and*

*Ethics in Washington v. Department of Interior*, where the court seemed to suggest that a defect

in administrative exhaustion could be cured by filing an additional request.  *See Citizens for*

*Responsibility & Ethics in Wash. v. Dep't of Interior* ("*CREW*"), 503 F. Supp. 2d 88, 100

(D.D.C. 2007) ("The more efficient method of obtaining information [sought in an unexhausted

request] . . . would be for the plaintiff to file an additional FOIA request.").  Upon further

analysis, however, the court was suggesting no such thing.  That case involved a FOIA requester

that had made a series of requests to the Department of the Interior ("DOI") seeking a particular

group of documents, and although the DOI released hundreds of documents, none of them were

the particular documents the requester had in mind.  *See id.* at 91.  Since the requester had not

obtained the particular documents it sought, it filed a lawsuit claiming that the searches for the

documents had been inadequate.  *Id.*  Three of the four requests, however, had not been

administratively exhausted, and as to those requests, the court stated:  "The more efficient

method of obtaining information, rather than attempting to revive an unexhausted claim by filing

a late appeal, would be for the plaintiff to file an additional FOIA request."  *Id.* at 100.  The court

was clear, however, that when it referred to "fil[ing] an additional FOIA request," it meant filing

either a "*more specific* FOIA request" or a FOIA request seeking "*other, broader* searches."  *See id.* at 100–02 (emphases added).  Hence, that case stands for the uncontroversial proposition that a FOIA requester is "perfectly free to file an additional FOIA request" that is more "tailored" to the documents she is seeking, and it did not address the situation in the instant case, where a requester seeks to "revive an unexhausted claim" by filing *identical* requests.  *Id.* at 100, 102.[8]

For the administrative exhaustion requirements to serve any meaningful purpose, duplicative requests filed by the same individuals for the same information cannot cure all unexhausted prior requests, and this case is a prime example:  When *withholding decisions* are made in an unexhausted request, a subsequent, identical request cannot cure a prior failure to exhaust because withholding decisions in particular "involve[] [the] exercise of the agency's discretionary power [and] allow the agency to apply its special expertise."[9]  *McCarthy*, 503 U.S. at 145.  The alternative would be to require an agency faced with a duplicative FOIA request to reassess any previous withholding decisions made within the scope of the duplicative request.  Yet, withholding decisions are often the most labor-intensive and complicated aspect of an agency's FOIA response efforts.  Thus, after agency employees have already processed a FOIA request and made withholding decisions, requiring the same or yet another agency employee to plow the same ground all over again, while a backlog of requesters remain waiting for attention, is not an efficient use of agency resources.  Holding otherwise would potentially allow a small group of FOIA requesters to hold an agency's resources hostage with a constant barrage of FOIA spam in the form of duplicative requests, compelling *de novo* reassessment of the same

---

[8] *CREW* also did not involve an attempt to "revive" an unexhausted challenge to withholding decisions, but rather dealt with the adequacy of searches.

[9] This is particularly true when FOIA requests and withholding decisions involve national security issues, since "the courts must defer to the executive on decisions of national security."  *Ctr. for Nat'l Sec. Studies v. U.S. Dep't of Justice*, 331 F.3d 918, 932 (D.C. Cir. 2003) (upholding government's invocation of FOIA Exemption 7(a)).

withholding decisions *ad infinitum*.[10]   Agency resources are not unlimited, and thus allowing

requesters to monopolize scarce agency resources in this way—through filing duplicative

requests where the records are static—would also disserve the purposes of the FOIA because

every minute spent giving *de novo* reassessment to a duplicative request is a minute not spent

processing new requests and disclosing new, previously undisclosed records.

 As a result, allowing the plaintiffs now to challenge the defendant's 2007 and 2008

withholding decisions (and the sufficiency of the resulting *Vaughn* indices) when the agency did

not have the opportunity for *de novo* administrative review, due to the plaintiff's failure to appeal

the 2007 and 2008 withholding decisions, would directly undermine the purposes and policies

underlying the administrative exhaustion doctrine.  *See Hidalgo*, 344 F.3d at 1259–60.

Inexplicably, the defendant does not raise exhaustion as a basis for dismissing any of the

plaintiffs' claims.  Nevertheless, the Court holds that the plaintiff's claims in this action may not

extend beyond the issues properly appealed to and decided by the agency in conjunction with the

2009 and 2010 requests.  The Court therefore also necessarily holds that any issues related to the

unexhausted 2007 and 2008 requests that were not appealed to and decided by the agency in

conjunction with the exhausted 2009 and 2010 requests have been waived.  This means that the

plaintiffs' claims relating to the defendant's 2007 and 2008 withholding decisions (and the

resulting *Vaughn* indices) will be dismissed *sua sponte* for failure to state a claim upon which

relief may be granted under Federal Rule of Civil Procedure 12(b)(6).[11]  *See id.* at 1260

(directing district court to dismiss unexhausted claims under Rule 12(b)(6)).  Therefore, the

---

[10] Of course, a *different* requester is free to make an identical FOIA request as a previous requester and then pursue her administrative remedies and exhaust them before seeking judicial review of withholding decisions.  That, however, is not the situation presented in this case.

[11] Although the Court will dismiss these claims, the Court does so based upon the prudential considerations surrounding the requirement of administrative exhaustion, and therefore the Court does not reach the merits of those claims.

Court will only consider the sole remaining issue presented by the plaintiffs' claims and the administrative record below: whether the searches performed by the EOUSA were reasonably calculated to uncover all relevant documents.[12]

**B.    Adequacy and Responsiveness of the EOUSA's Search**

The plaintiffs contest the adequacy of the EOUSA's searches for records on two grounds. First, they argue that the EOUSA has failed to establish that it conducted a reasonable search for the requested records "because it claims to have reviewed only tape recording logs rather than conducting an actual search for records concerning the attempted tapings." *See* Pls.' Mem. at 12–14; Pls.' Reply to Def.'s Reply in Supp. Mot. Summ. J. & Opp'n Pl.'s Mot. Summ J. ("Pls.' Reply") at 1–3, ECF No. 19.  Second, the plaintiffs argue that the EOUSA failed to account for all responsive records by specifically excluding six categories of documents that Mr. Connolly was instructed "not to forward . . . to EOUSA."  Pls.' Mem. at 12, 15; Pls.' Reply at 3–4; First McCall Decl. ¶ 2.

"[A]n agency responding to a FOIA request must 'conduct[] a search reasonably calculated to uncover all relevant documents,' and, if challenged, must demonstrate 'beyond material doubt' that the search was reasonable."  *Truitt v. Dep't of State,* 897 F.2d 540, 542 (D.C. Cir. 1990) (footnotes omitted) (quoting *Weisberg II*, 705 F.2d at 1351); *accord Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) ("In order to obtain summary judgment the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.").  The adequacy of a search "is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case."  *Weisberg III*, 745 F.2d at 1485.  "The question is not whether there

---

[12] The Court notes once again that the plaintiffs failed to oppose the defendant's arguments that the searches performed by the Criminal Division and the FBI were adequate, and therefore the Court considers the adequacy of those searches to be conceded by the plaintiffs.  *See* discussion *supra* page 13.

might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate.*" *Steinberg v. U.S. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994) (quoting *Weisberg III*, 745 F.2d at 1485).  Thus, to obtain summary judgment against a challenge to the adequacy of a search, the agency must show that there exists no genuine issue of material fact regarding whether "the search was reasonably calculated to discover the requested documents, not whether it actually uncovered every document extant." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).  "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Id.*

  "An agency may establish the adequacy of its search by submitting reasonably detailed, nonconclusory affidavits describing its efforts." *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318 (D.C. Cir. 2006).  Such affidavits should "denote which files were searched," by whom those files were searched, and reflect a "systematic approach to document location." *Weisberg v. U.S. Dep't of Justice* ("*Weisberg I*"), 627 F.2d 365, 371 (D.C. Cir. 1980). "A reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment." *Oglesby*, 920 F.2d at 68.

  For the reasons discussed below, the Court holds that the defendant ultimately conducted an adequate search for records related to the alleged recording of Plaintiff Toensing but conducted an inadequate search for subpoena records.

1.      *The EOUSA Conducted an Adequate Search for Records Related to the Alleged Recording of Ms. Toensing*

In this case, the EOUSA, in conjunction with the Delaware USAO, took three actions to search for the records requested by the plaintiffs that relate to alleged tape recordings of Ms. Toensing.  First, on October 2, 2008, in response to the plaintiffs' 2008 EOUSA request, an AUSA from the Delaware USAO named Patricia Hannigan certified that the Delaware USAO did not have any documents or recordings that were responsive to the plaintiffs' request.  *See* Jordan Decl. ¶ 6.  That certification stated:  "No additional search time, because we know there were no tapes/transcripts responsive to the request."  *Id.* Ex. C.  Next, Theresa Jordan—the Delaware USAO employee who helped Mr. Connolly perform the 2007 EOUSA search—reviewed "a detailed log of all recordings, telephonic or otherwise, made during the course of the New Castle County investigation" during the process of preparing her January 20, 2012 declaration.  *Id.* ¶ 7.  This log "includes the names of persons subject to recordings, as well as the time and format of the recording," and Ms. Jordan attested that the log "does not indicate that Ms. Toensing was the subject of any recordings."  *Id.*  Finally, sometime in between March 26, 2012 and April 26, 2012,[13] representatives from the Delaware USAO searched for "documents that reflected 'an intent to tape' Victoria Toensing by the [Delaware USAO] during its criminal investigation of Sherry Freebery and Thomas Gordon."  Second McCall Decl. ¶ 2.  This search was intended to supplement the original search in order to account for the new category of documents listed in the plaintiffs' 2010 EOUSA request, *i.e.,* "documents reflecting an intent to tape" Ms. Toensing from August 2001 to May 26, 2004.  *See* First Boseker Decl. Ex. S; *see also*

---

[13] The search must have been conducted during this time period because the defendant requested an extension of time to file its reply brief on March 26, 2012, stating that the EOUSA "has decided to process a supplemental response to Plaintiffs' FOIA request, which will likely entail additional searches," *see* Def.'s Mot. Extension of Time at 2, ECF No. 17, and the search itself was described in Jamie McCall's April 26, 2012 declaration, *see* Second McCall Decl. ¶¶ 4–14.

Second McCall Decl. ¶ 2 ("[T]he present search supplements the previous search conducted by the [Delaware USAO].").

In sum, the first two searches searched for the "tapes and records" and "transcripts of recordings" themselves, which the plaintiffs sought in their 2008 and 2009 requests, and the third search searched for "documents reflecting an intent to tape," which the plaintiffs added in their 2010 request.  Because the relevant standard asks whether a search was "reasonably calculated to uncover all *relevant documents*," the Court will group the first two searches together to determine their composite adequacy with respect to the first two categories of records, and then it will consider the adequacy of the third search to determine its adequacy with respect to the third category of records.

a)      *Searches for "Tapes and Recordings" and "Transcripts of Recordings"*

The Court first holds that the 2008 "search" performed by Ms. Hannigan was clearly inadequate.  As Ms. Hannigan's certification admits, she spent "[n]o additional search time" because she and her colleagues "kn[ew] there were no tapes/transcripts responsive to the request."  Jordan Decl. Ex. C.  It is precisely this kind of cursory government response to requests for information that the FOIA was intended to prevent.  Although "[a]gency affidavits are accorded a presumption of good faith," *SafeCard Servs.*, 926 F.2d at 1200, an affidavit must still incorporate the required factual content to demonstrate the search's adequacy as a matter of law (*i.e.*, the search terms, the type of search performed, etc.).  *See Oglesby*, 920 F.2d at 68. Hence, Ms. Hannigan's response, which admits that no search was performed and relies instead on professed personal knowledge that no responsive records exist, cannot possibly constitute an adequate search.

The search performed by Ms. Jordan in 2012 for the tapes, recordings, and transcripts of recordings, on the other hand, was adequate.  As stated in her January 20, 2012 declaration, Ms. Jordan personally reviewed a log that contained entries for "all recordings, telephonic or otherwise, made during the course of the New Castle County investigation," and each entry included "the names of persons subject to recordings, as well as the time and format of the recording."  Jordan Decl. ¶ 7.  The Jordan Declaration also describes how the search was performed and the fact that Ms. Toensing's name was specifically queried.  This search was adequate because the log that was reviewed was comprehensive, in that it contained "all recordings, telephonic or otherwise, made during the course of the New Castle County investigation," and therefore it would reasonably be expected to include "all files likely to contain responsive materials (if such records exist)."  *See Oglesby*, 920 F.2d at 68.

The plaintiffs object that this search was inadequate for two reasons.  First, they argue that reviewing a log of all recordings does not qualify as "conducting an actual search."  Pls.' Mem. at 12.  Second, they also implicitly argue that, because Ms. Toensing has a "basis for belief" that Mr. Tucker was taping their discussion, "records should exist concerning this taping," and therefore they argue that, because the search performed by the EOUSA did not uncover any such records, the search must have been inadequate.  *Id.* at 4, 13.

The plaintiffs' first argument is without merit.  The FOIA does not require that a "search" of records take any particular form, such that there would necessarily be a distinction between a comprehensive review of a log of records and an "actual search."  This is because records themselves can take many forms and may not exist in a place that can be electronically searched, despite the modern conventional wisdom that all information can be marshaled by a few keystrokes.  *See* 5 U.S.C. § 552(a)(3)(D) (defining "search" as "to review, *manually or by*

*automated means*, agency records for the purpose of locating those records which are responsive to a request" (emphasis added)).  All that the FOIA requires is that an agency makes "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested," *Oglesby*, 920 F.2d at 68, and the EOUSA did that here.  The log that was reviewed by Ms. Jordan contained "all recordings, telephonic or otherwise, made during the course of the New Castle County investigation," which is an eminently reasonable place for an agency to search for "tapes and/or recordings" made "during the investigation of Thomas P. Gordon," which were the records requested by Ms. Toensing.[14] *See* Jordan Decl. ¶ 7; First Boseker Decl. Ex. G.  Such an all-inclusive log would logically be the "only possible place" an agency would need to search to find the records requested.  *Oglesby*, 920 F.3d at 68 (emphasis omitted).

Indeed, the plaintiffs do not suggest any specific deficiencies in the search or other places that must be searched to render the search adequate.  They merely suggest that the defendant should "search again," or that "Mr. Tucker and Mr. Connolly should also be questioned about their knowledge of any tapings and where these records are logged."  Pls.' Mem. at 14.  The only potential defect with this search was that a review of the recording log would not be reasonably likely to *directly* uncover "transcripts of such tapes and/or recordings," because the log itself did not include transcripts—it only included entries for the recordings themselves.  It is, however, both logical and reasonable for an agency to conclude that, when a comprehensive search for

---

[14] Although the plaintiffs clearly insinuate that the alleged recordings may have been effected by Mr. Connolly *ultra vires* and thus outside the proper scope of the New Castle County investigation., *see* Toensing Decl. ¶¶ 24–28, Pls.' Mem. at 3–4, the plaintiffs' request was limited to tapes, recordings, or transcripts that were "collected, accumulated and/or maintained by the [DOJ] *during the investigation of Thomas P. Gordon*," First Boseker Decl. Ex. G (emphasis added).  In light of this self-imposed limitation on the scope of the search, the defendant was reasonable in not searching beyond the official log of all recordings that were made during the course of the New Castle County investigation.

particular recordings turns up empty, no transcripts of such recordings are reasonably likely to be located by searching elsewhere.

The plaintiffs' second argument likewise fails because it runs contrary to the well-settled standard for what agencies must do in order to demonstrate the adequacy of a FOIA search. "Mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *SafeCard Servs.*, 926 F.2d at 1201. This Circuit has long held that "a search is not unreasonable simply because it fails to produce all relevant material." *Meeropol v. Meese*, 790 F.2d 942, 952–53 (D.C. Cir. 1986); *see also Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) ("The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate."). Thus, although Ms. Toensing may genuinely believe that she was recorded by the EOUSA, the mere fact that an otherwise adequate search did not uncover such recordings does not automatically render that search inadequate, and it certainly does not mean that the defendants should be required to question Messrs. Connolly and Tucker about these alleged tapings, as the plaintiffs suggest. *See* Pls.' Mem. at 14.  The agency affidavit of Ms. Jordan establishes that the EOUSA's search for "tapes and recordings" and "transcripts of recordings" was reasonably adequate, and therefore the defendant's motion for summary judgment will be granted in part with respect to that issue.

b)  *Search for "Documents Reflecting an Intent to Tape"*

Only one search was performed by the EOUSA to discover any "documents reflecting an intent to tape" Ms. Toensing from August 2001 to May 26, 2004.  That search was performed by Ms. Jordan and Jamie McCall (an AUSA in Delaware) in March or April of 2012 and searched two categories of documents:  (1) paper documents of the New Castle County investigative file

and (2) electronic documents of the investigative file.  *See* Second McCall Decl. ¶ 3.  The search

proceeded in three steps or "levels."  In the first level of the paper document review, Mr. McCall

and Ms. Jordan reviewed seventy-two boxes of documents that contained paper documents

related to the case and determined which of those boxes were "reasonably likely to contain

documents potentially responsive to the FOIA request," based on the general description affixed

to each box.  *Id.* ¶¶ 4–5.  This narrowed the universe from seventy-two boxes to seven boxes.

*See id.* ¶¶ 5–6.  In the second level of review, Ms. Jordan flagged any documents in the seven

boxes that contained any of the following key words:  "Victoria, Toensing, VT, Joseph,

diGenova, Genova, JD, Shawn Tucker, and an additional keyword that was Shawn Tucker's

code name."  *Id.* ¶ 7.  In the third and final level of review, Mr. McCall reviewed each of the

documents flagged by Ms. Jordan "to determine whether these documents were, in fact,

responsive to the FOIA request," and he also "performed a 'spot check'" of each of the boxes

that had been flagged for second-level review.  *Id.* ¶ 8.

     The search of electronic records proceeded similarly.  First, Mr. McCall "determined that

the electronic files reasonably likely to include responsive documents would be the Federal

Bureau of Investigation's ('FBI') field reports, referred to as 'FBI 302 reports,' as well as the

primary case agent's personal notes."[15]  *Id.* ¶ 9.  Second, Ms. Jordan conducted a second-level

review of those files by searching for and printing any documents that contained the key words

listed above.  *Id.* ¶ 10.  Finally, Mr. McCall once again performed a third-level review of all

documents containing the key words to determine whether they were in fact responsive.  *Id.* ¶ 11.

     The Court holds that this search was adequate with respect to "documents reflecting an

intent to tape" Ms. Toensing because the defendant has demonstrated, through Mr. McCall's

---

[15] The EOUSA also searched Colm Connolly's personal computer and e-mail files for the key words "Victoria, Toensing, Shawn, Tucker," and Shawn Tucker's code name.  Second McCall Decl. ¶¶ 12–14.

sworn affidavit, that "the search was reasonably calculated to discover the requested documents."

*SafeCard*, 926 F.2d at 1201.  Mr. McCall's affidavit exhaustively describes how the multi-layer

search was performed, who performed it, and what search terms were used, and it also avers that

all of the paper and electronic files reasonably likely to include responsive documents were

searched.  Therefore, under well-settled precedent, this search was adequate as a matter of law,

and the defendant's motion for summary judgment will be granted in part on the issue of whether

the EOUSA's search for documents reflecting an intent to tape Ms. Toensing was adequate.

*See,e.g.*, *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325–26 (D.C. Cir. 1999)

(discussing standard for adequacy of agency search); *Oglesby*, 920 F.2d at 67–68.

### 2. *The Defendant Has Not Demonstrated That the EOUSA's Search Related to the Subpoenas Was Adequate or That It Accounted for All Responsive Records*

The EOUSA, in conjunction with the Delaware USAO, performed a single search on

January 9, 2008 for the requested records relating to the grand jury subpoenas issued to the

plaintiffs in November 2003 (hereinafter "subpoena records").  The search was performed

independently by both Ms. Jordan and Mr. Connolly of the Delaware USAO, and their search

efforts were documented in standard "FOIA Cost Tracking" and "Certification of Search" forms.

*See* Jordan Decl. ¶ 4, Exs. A–B.

As explained in the defendant's motion papers and documented in the record, Ms. Jordan

and Mr. Connolly reviewed a number of files reasonably likely to contain the subpoena records,

including:  the Delaware USAO's physical case file from the New Castle County investigation;

the AUSA's file from the investigation; a "Concordance database" of scanned records relating to

the investigation; the "My Documents" folder on Ms. Jordan's and Mr. Connolly's government

computers; Mr. Connolly's e-mail folders; the AUSA's e-mail folders; 2003 and 2004 calendar

entries for Mr. Connolly and Ms. Jordan; and phone logs from 2003 and 2004.  *See* Def.'s Mem.

at 15–16; Jordan Decl. Exs. A–B.  Ms. Jordan's role in the search was largely as administrative

support:  retrieving files, organizing and copying potentially relevant documents, and creating

document indices.  *See* Jordan Decl. Ex. A.  She also performed some keyword searching and

reviewed the 2003 and 2004 phone logs.  *See id.*  Mr. Connolly's role was more primary.  He did

most of the actual keyword searching, he reviewed the physical case files, and he reviewed the

2003 and 2004 calendar entries.  *See id.* Ex. B.  The two spent a combined 23.25 hours searching

the New Castle County files for responsive records.  *Id.* Exs. A–B.

At first blush, this might be able to pass muster as a thorough and adequate search of all

files likely to contain responsive materials, but the plaintiffs protest that the search was

inadequate because Mr. Connolly was directed by the EOUSA not to forward six categories of

documents.[16]  *See* First McCall Decl. ¶ 2; Pls.' Mem. at 12, 14.  The defendant responds that "it

can be reasonably inferred that those six categories were not searched because they were deemed

categorically non-responsive, categorically exempt, or not reasonably likely to include

responsive records."  Def.'s Reply at 9.

To assess the plaintiff's objection, the Court must first determine whether the defendant's

admitted failure to forward six categories of documents would constitute a defect in the search,

whether it would constitute a defect in the defendant's *Vaughn* index, or both.  The defendant

appears to concede that this is a search issue, based on its admission that the "six categories were

not searched" at all.  *Id.*  The plaintiffs, however, argue that "this is not entirely a search issue"

because they read the Second McCall declaration to admit that these six categories of documents

were originally *located* by Mr. Connolly and Ms. Jordan but simply were not *forwarded* to the

---

[16] Once again, the six categories included:  (1) drafts of papers filed with the DOJ's Office of Professional
Responsibility, (2) drafts of Mr. Connnolly's responses to a Senate Questionnaire, (3) grand jury records, (4) court
filings submitted under seal, (5) drafts of court filings submitted under seal or submitted *ex parte*, and (6) duplicate
documents.  *See* First McCall Decl. ¶ 2; Def.'s Mem. at 16.

EOUSA along with the rest of the responsive records.  *See* Pls.' Reply at 3.  The Court finds this to be a search issue, not only because the defendants admit that the six categories of documents "were not searched," but also because that admission is supported by the documentation of the searches performed.  Both Ms. Jordan's and Mr. Connolly's detailed listings of their response efforts indicate that, at least with respect to the Concordance database, the search was narrowed to "non-grand jury records."  *See* Jordan Decl. Exs. A–B.

Based on the defendant's admission that these six categories of documents were excluded from the scope of the EOUSA's 2007 search, that search was inadequate.  The defendant is perhaps justified in inferring that these six categories of documents would be categorically exempt from production under one or more FOIA exemptions, but the fact that a category of documents is likely to be exempt from disclosure does not allow an agency to preemptively exclude such a category of documents from its search.  Instead, in that situation, an agency must include in its search "all files likely to contain *responsive* materials," *Oglesby*, 920 F.2d at 68 (emphasis added), and account for any of those responsive documents that the agency believes should be withheld.  In other words, an agency's search obligations are in no way limited by whether certain documents will eventually be classified as exempt from disclosure because an agency is obligated to perform a search "reasonably calculated to uncover *all relevant documents*," not just all non-exempt, relevant documents.[17]  *Weisberg III*, 705 F.2d at 1351 (emphasis added).  Def.'s Reply at 9.  Therefore, the defendant's explanation that it failed to

---

[17] This sort of "preemptive withholding" is doubly problematic in this case because, not only did it render the search itself inadequate, it has necessarily also infected the adequacy of the EOUSA's *Vaughn* indices because, although these six potentially relevant categories of documents were withheld from the plaintiffs, they were never accounted for under any particular exemption, and thus the plaintiffs and the Court would have no concrete basis from which to conclude that those withholdings were appropriate.  As discussed above, however, the Court does not address the adequacy of the defendant's *Vaughn* indices at this time because of the plaintiffs' failure to exhaust their administrative remedies with respect to the defendant's withholding decisions.

search for these six categories of documents because they were presumptively exempt is entirely misguided and at odds with its obligations under the FOIA.

Additionally, the defendant's explanation that it failed to search for these six categories of documents because they were "categorically non-responsive" or "not reasonably likely to include responsive records," is equally insufficient on this record.  It is certainly true that an agency "need only search those systems in which it believes responsive records are likely located," *Hall & Assocs. v. EPA*, 846 F. Supp. 2d 231, 241 (D.D.C. 2012), but on summary judgment, an agency has the burden of logically explaining, through sworn affidavits, why certain files or categories of documents were not included in a search.  *See Oglesby*, 920 F.2d at 68; *see also Jefferson v. Dep't of Justice*, 168 F. App'x 448, 450 (D.C. Cir. 2005) (holding search inadequate where "[t]he Government has offered no plausible justification for limiting its search for responsive records to its investigative database"); *Morley*, 508 F.3d at 1120 (holding that agency's "*post hoc* explanation" for why it did not search for certain documents "cannot make up for the[agency declaration's] silence").  Because the defendant offers no evidence to demonstrate why these six categories of documents would have been categorically non-responsive, its failure to include those categories of documents in its search further renders that search inadequate.

Furthermore, although the parties do not address this issue, the Court notes that the defendant has presented no evidence to demonstrate that it accounted for the two arguably material additions contained in the plaintiffs' 2010 requests.  The 2010 EOUSA request specified that it was seeking "[a]ll responses and internal memoranda ***throughout the*** [***DOJ***] regarding such requests to subpoena diGenova and/or Toensing" and "[a]ll documents submitted by the U.S. Attorney Colm Connolly ***or staff of the U.S. Attorneys Office for the District of***

*Delaware*." First Boseker Decl. Ex. S. For summary judgment to be appropriate, the defendant must demonstrate either that it performed a broader supplementary search to encompass these additions or that these additions were already encompassed in the original EOUSA search, but the defendant has done neither.

Thus, the Court holds that the 2007 EOUSA search, relied upon by the defendant in concluding that it had conducted an adequate search for the subpoena records requested by the plaintiffs, was inadequate because it failed to include six categories of documents that may have included responsive records and because it failed to account for the two material additions in the 2010 request discussed above. The defendant has also failed to explain or justify why the six categories of documents should reasonably have been excluded from the scope of the search. Therefore, there are genuine issues of material fact regarding whether the EOUSA's search for subpoena records was adequate, and thus the defendant's motion for summary judgment will be denied in part with respect to that issue.

## IV.    CONCLUSION

In sum, the Court holds first that, where a FOIA requester fails to exhaust her administrative remedies in connection with an initial request, but then files a subsequent, identical request for which the requester does exhaust her administrative remedies (either constructively or through an administrative appeal), the requester may only obtain judicial review of issues related to the initial, unexhausted request insofar as the agency elected to review those particular issues through an administrative appeal on the merits in connection with the subsequent, identical, exhausted request. The plaintiffs have failed to exhaust their administrative remedies with respect to the defendant's withholding decisions. Consequently, the plaintiffs' claims regarding (1) the propriety of the defendant's invocation of FOIA

Exemptions (b)(3), (b)(5), (b)(6), and (b)(7); and (2) the sufficiency of the resulting *Vaughn*

indices, are **DISMISSED** for failure to state a claim.

The Court also holds that the EOUSA's search for subpoena records was inadequate, but

that its search for "tapes and recordings," "transcripts of recordings" and "documents reflecting

an intent to tape" Ms. Toensing were adequate.  Therefore, the defendant's motion for summary

judgment is **GRANTED in part** for sufficiently demonstrating that its search for "tapes and

recordings," "transcripts of recordings" and "documents reflecting an intent to tape" Ms.

Toensing were adequate.  The defendant's motion for summary judgment is **DENIED in part**

for failing to demonstrate that its search for subpoena records was adequate.  Since the latter

search may have been adequate, the partial denial is *without prejudice*, and for that same reason,

the plaintiffs' cross-motion for summary judgment is **DENIED without prejudice**.

In light of the inadequate search for subpoena records, as described in the defendant's

submissions discussed above, the most efficient course would be to remand this matter to the

agency to ensure that an adequate search is performed.  *See, e.g.*, *People for the Ethical*

*Treatment of Animals, Inc. v. Bureau of Indian Affairs*, 800 F. Supp. 2d 173, 178 n.2 (D.D.C.

2011) ("[I]n a FOIA case, even if defendant had failed in obtaining summary judgment because

of an inadequate search, . . . . the usual remedy is for the Court to remand to the agency to

expand its search or to provide more detailed declarations regarding the scope of the search.").

Therefore, the parties are directed to confer and jointly propose search and documentation

procedures appropriate for this case.  These procedures should address, *inter alia*, how the search

for subpoena records will be modified so as to be adequate or what additional detail will be

provided in the defendant's declarations to demonstrate the original search's adequacy.  The

parties' joint proposal, noting any disagreement among the parties regarding the search and

documentation procedures, is due to the Court by October 12, 2012.  *See generally Kean v. Nat'l Aeronautics & Space Admin.*, 480 F. Supp. 2d 150, 159 (D.D.C. 2007).  An appropriate Order accompanies this Memorandum Opinion.

Date:  September 13, 2012

_/s/ Beryl A. Howell_
BERYL A. HOWELL
United States District Judge